Good morning, your honors. May it please the court, Sam Lieberman of Stata St. Goldberg on behalf of co-lead plaintiff appellant. Now plaintiff's own Dang Dang American Depository shares exclusively listed on the NICE, New York Stock Exchange. They chose a New York forum because the shares have a mandatory New York forum clause. And on the first appeal, Fasano one, the court below ignored that clause. This court vacated to decide and remanded if the presumption of enforceability applied. It held if the presumption of enforceability applies, plaintiff's choice of forum controls unless there's a strong showing that the clause is unreasonable, unjust, fraudulent, or the product of overreach. On remand, the court below held the presumption applied to five defendants and three claims. The court also held that the defendants failed to rebut the presumption of enforceability. But surprisingly, the court dismissed the whole case, holding that Atlantic Marine created some new reason to disregard a forum clause for exceptional cases. That was legal error, which requires reversal here. Because under Fasano one and MS Bremen, the only basis to disregard a mandatory forum clause on a forum non-motion is a strong showing that the clause is unreasonable, unjust, fraudulent, or an overreach. Atlantic Marine did not change the MS Bremen test. Atlantic Marine quoted MS Bremen as good law. And it can't select. This is Judge Chin. This case is a little bit different, right? Because you have some defendants who are not signatories. You have some claims that are not covered. You know, are there precedents with a similar situation? Yes, Judge Chin. That's a great question. Yes, exactly. And this court has dealt with it. The Asilma case at 467 F3rd at 826. This court reversed dismissal of an entire case to enforce a New York forum clause against one defendant, even though there was a contradictory clause that applied to two other defendants that pointed to South Korea. In Lazar Kaplan, this court enforced a New York forum selection clause for one cause of action, even though nine other claims required litigation in Belgium. We also have the Phillips, the audio active case, where there was a forum clause that found four claims for copyright and state law that actually said those claims had to go to a different forum. But this court, because of the deference to a plaintiff's choice of forum head, held that the uncovered claim had to be litigated in New York. And this court reversed on that ground. So there's binding precedent that speaks to this exact issue. What the court below found is exceptional, in fact, is a routine occurrence in the Second Circuit, which is that you have clause that on their face speak to certain litigating claims, but yet this court has held... Some of those cases involve successors and interest, don't they? And isn't that a different situation? Well, that's true. And so let's get to that point, Judge Chin, right? So you're right that Cogwash Lenders talks to a successor in interest and makes clear that a successor in interest is bound by a forum clause. So what's the key point that makes this case like those cases? Here, all the defendants are Dang Dang affiliates who acted jointly with Dang Dang in authoring the false statements at issue, but also took control of Dang Dang's destiny as a controlling buying group to take over Dang Dang. So here they literally are no different from a logical perspective from a successor in interest. They took over the company and they signed the Form 13-S. All of them, every defendant before this court signed the same statement that Dang Dang issued. And our point is that when affiliates who act jointly with the company, the signatory, on a forum clause and pass their lot and act with that company, those people should be bound by that forum clause. And there's another reason why. It was clearly foreseeable to them that the deposit agreement would apply to them because their own joint statements, the forum statements, mentioned the deposit agreement at least 32 times, including 11 times in caps. The false statements at issue here can't stop talking about the deposit agreement. So we think it's fully fair and foreseeable to them that it would apply here because they're acting with the company, they're taking over the company, and they actually are talking about the actual agreement that has the clause that binds them. So let me just follow up on that, Mr. Lieberman. This is Judge Lynch. Some of the defendants actually were controlling the company or were significant players in the company at the time of the depository agreement. And certainly they were aware from the very beginning of the forum selection clause. What about some of the others who joined the company much later and then participated in this activity? You're saying that they also should have foreseen the existence of the forum selection clause and that they would be bound? Yes, Judge Lynch. And the reason is that the closely related test looks at closely related to the company at the time of the dispute, not at the time of the drafting of the clause, because different disputes have different impacts on the clause. New York state law says that for purposes of looking at the close relationship, you look at the nature of the acting with the company. They were acting in the Form 13e statement. They actually are listed authors with the company. So with respect to this dispute, it's foreseeable to them. So sure, maybe they become executives and their affiliates and their involvement occurs sometime after the drafting of the forum clause. But I think the case law focuses on the nature of the dispute and not the timing of the drafting of the clause. And with respect to the nature of the dispute, these defendants were acting upon the clause. They're acting to take control of the defendant's entities. I mean, it's undisputed here. The Form 13e's call them the FIERS group. And so Mr. Yao, who is a vice president since 2010, we think actually that is the time of the forum clause. But even more importantly, he's acting with the company with respect to the facts under dispute. And that's the test, not the test of, were you closely related at the drafting of the contract? What is the status? Oops, go ahead. Well, just one quick follow-up. What is the evidence that they were aware of the forum clause? How could it be foreseeable that they're bound by it unless they are at least aware that the forum clause exists? Yes, the evidence, Judge Lynch, I would to you is where is their own Form 13e joint statement. They specifically referenced that the transaction here would be done under the ADS deposit agreement. 32 times in the Form 13e. And these are the authors. They sign on to these statements. They're the listed authors. And they mentioned the deposit agreement again and again and again. So fundamentally- I get it. Okay, I understand your point. If you can't stop talking about it, you know the agreement. And look, again, this is the exclusive listing on the American Exchange is the real point here because these are American depository shares. These shares are exclusively traded on the New York Stock Exchange. And they're talking about this transaction. And therefore, they know that's the agreement that applies to these shares. And they say it again and again. So that's the Your request is that the non-signatory defendants be forced to litigate in New York? Or you think that the case should be severed and the plaintiffs can proceed against the signatory defendants in New York? What is your position? Our position, Judge Shin, is all defendants that are before this court should be bound because they are all closely related to the company. And, you know, this is not a situation like a SOMA where there's a contradictory clause pointing to Cayman. At best, there's potentially an arbitration clause here, but that would point to New York. But we don't understand how the court below got to Cayman. There's nothing pointing that way. The clause here- Well, there are lots of contacts with the Cayman Islands and frankly, very little in terms of contact with New York other than that the shares were traded on the stock exchange. Well, this was the listing going private from New York. This whole transaction was about taking the stock from New York. So the idea, the depositories in New York, the statements are disseminated in New York. I'd really love to hear what all of the great Cayman contacts are here because the company is operated out of China and is traded in New York. So- All right. Thank you. We'll hear from your colleague on the other side, Mr. Mussoff. Thank you, Judge Chin. And may it please the court, Scott Mussoff from Skadden Arbors for Defendants Appellees. The district court correctly decided that it should not retain an action that is almost entirely foreign parties and that arose from a merger executed in a foreign jurisdiction under Cayman law solely on the basis of a form selection clause that at most, and I'll get to this in a moment, at most binds only five of the 13 defendants and only half of the plaintiffs asserted claims. As Judge Fela held retention of such an action would be less about protecting the party's legitimate expectations and more like the tail wagging the dog. That was that special appendix 31 to 32. And that analysis that the district court conducted is faithful not only to Atlantic Marine, but also MS Bremen and this prior decision from this court in this case. To hold otherwise we respectfully submit would mean that enforcement of a form selection clause, no matter how attenuated to the thrust of the claims asserted and regardless of whether it covers all of the parties and claims and without regard to public interest or public policy must automatically be applied. Well, Mr. Mussoff, excuse me, this is so attenuated. The claims that put this in federal court at all are securities law claims. The claim is that the plaintiffs who bought American depository shares on the New York Stock Exchange are being defrauded by a buyout agreement that is unfair and fraudulent. Now, it may be, it may not be, of course, the merits aren't before us, but that seems to have significant contacts with New York. And then you look and say, well, what is convenient for the parties? There's nobody who's really in Cayman who's a human participant in this case. The defend, the individual defendants are all in China. The plaintiffs are mostly in France, although they did find a plaintiff who is actually from New York. So what's so convenient about going to Cayman Islands? Can you get there in a direct flight from China? Judge Lynch, this transaction that's being challenged is the merger agreement and it's a side impact that the ADS are being cashed out. Any holder of ADS in a Cayman company is aware of and made aware of in public filings that Cayman law will govern the underlying corporate dispute. And it's no different than saying the court of chancery in Delaware is the convenient form for a Delaware corporation in a going private cash out event when that was the expectations of all. And while they say that the parties in the 13E cited the deposit agreement over and over again, what plaintiffs neglect to mention and entirely ignore, as we cited in our opposition brief, that none of those references relate to the form selection clause, indeed the opposite. Many of the references reiterate that any investor challenge to the merger must take place in a Cayman court pursuant to Cayman law. That's joint appendix 343, 345 to 46, 350, 358, 361, 373, 379, 433, 438 and 440. And it also reminds that the deposit agreement could be amended and refers investors to the attached merger agreement, which cautioned that in any conflict between the deposit agreement and the merger document, the latter would control. The merger agreement is what would control. JA 133, section 201, little b in the hall. Therefore, we respectfully submit that the forum selection clause may not even apply at all here. But if it does, it would only apply to the minority of claims that, as Judge Fea said, were artfully pled in an attempt to drag unbound and unwilling parties to use the federal courts in a way that would drag these parties into an inappropriate forum through creative and artful pleading. And the court noted that even the added securities claims, a claim under 13E may not even have, respectfully submit, does not even have a private right of action. In addition, if you look at the security, isn't that an issue that ought to be decided in New York? Of course, the case could change. And if on the merits, the federal securities claims all get dismissed, it might well be appropriate to reconsider what happens. But I'm having trouble understanding why, because there is an argument that the federal securities claim does not state a claim that that issue has to be decided by courts in the Cayman Islands. Your Honor, it doesn't. Again, this is the forum. We're not submitting that the forum non here is automatic. This involves a discretionary analysis by the district court in weighing public policies, public interests as to whether the enforcement of a forum selection clause, especially against non parties and for non claims that don't fall under it, should be bound. And we respectfully submit that Judge Vela in looking at those public policies noted the attenuated nature of these securities claims to the thrust of the complaint, which is challenging a Cayman law merger agreement that the Cayman courts should decide in the first instance. In fact, is there something going on already in Cayman? There was a trial already on fair value or what is the status of that? Your Honor, some objectors did raise a fair value appraisal proceeding in the Cayman Islands. The result of that is not in the record, Your Honor. All right. But I don't believe there is a dispute that these claims could have been brought in the Caymans. I would also note that even in Martinez at 740 F3rd at 220, this court specifically held that federal law governs the enforceability of forum selection clauses precisely because it must, quote, ensure that federal courts account for both the important interest served by forum selection clauses and the strong public policies that might require federal courts to override such clauses. And as Judge Vela had, we believe this is one of those, whether you call it unusual or strong, compelling cases where the public interest, the public policies, the unreasonableness of the forum selection clause outweigh the interests of the enforcement of the forum selection clause to a minority of claims. And I would also respectfully submit that we didn't hear if the court was going to enforce the forum selection clause against those minority of parties that could be bound by it and those the rest of the claims have to remain in the Southern District of New York. That the court, in weighing those public interests and public policies, chose to dismiss the entire case, which we respectfully submit is correct, but the opposite is not true, that they all must remain in this court otherwise. And I would just like to reiterate that while the court didn't reach the 12B6 motion on the federal securities claims, it did look at those claims to see how strong the tie was to the United States in weighing the interests of the United States versus other forums. And I think that's an appropriate analysis. We also respectfully submit that this court could actually reach the merits of the 12B6 motions and dismiss the securities claims, in which case the forum non-convenient decision becomes even more acute and more clear. But as in Grace v. Rosenstock, for example, a case in which Judge Kearse was on, that the causation element is entirely missing in a minority cash out when the minority vote would make no difference as to whether the merger would take place or not. And that's why it's a Cayman law issue because there are protections afforded under Cayman law. And again, all parties were aware that Cayman law would govern here when they originally bought their ADS. It's a Cayman law company based in China. And those are the risks that one takes when not even buying direct shares, but buying American depository shares in a foreign issuer under these circumstances. So we respectfully submit that Judge Faila did not abuse her discretion in granting this motion and faithfully applied the mandate from Fasano II, as well as the analysis under the Supreme Court's holding in Atlantic Marine. And we'll rest on our papers unless the Court has additional questions. Thank you. We'll hear the rebuttal. Mr. Lieberman? Yes. Your Honors, defendants have an SOMA problem. A SOMA says in the face of contradictory clauses, you apply them both. And so there is no reason given to not apply the clause with respect to those people bound by it here. Under a SOMA's binding precedent requiring reversal, at least as to the five defendants covered and the three claims covered. But the SOMA involved the contradictory clause. Here, there is no contradictory clause pointing to Cayman. Here, if there's anything, you have an arbitration clause pointing to New York. Our position is that every person covered should be in New York. And if there is any other place of a forum for any other parties or defendants, that should be in arbitration. The defendants also- Excuse me, Mr. Lieberman. This is Judge Lynch. What is Mr. Musaf referring to when he talks about his argument that the merger agreement has to be litigated in the Cayman Islands under Cayman law? What is he talking about there? He seems to be talking about a forum clause that's not- a permissive forum clause in the merger agreement that talks about claims based on the merger agreement. But our claims are based on the false statements in the 2013 E's filed with the Securities and Exchange Commission. They lied by saying Naples was independent counsel who was covering- who was providing independent counsel to the special committee. Naples was working for the controlling stockholders. They lied that this was substantively and procedurally unfair. In fact, the controlling stockholder had an open window into the special committee's determination. We're bringing a case based on lies here, lies in SEC filings here. And so the point is that merger agreement may be a permissive way to litigate merger claims. But with respect to securities law claims, it is clear that the ADS, which chooses New York law, the ADS points to a New York forum here. And ultimately, at the end of the day, if we have misrepresentations alleged based on SEC filings, those claims go to New York. We're not bringing that claim. And as to the appraisal proceeding that they referenced, that appraisal proceeding was filed after our claim. This case has been going on so long that their case may have preceded, but we filed our case first. And then they went ahead and filed in Cayman. In fact, securities law claims belong in New York. And we submit that even our common law claims are focused on a Sarbanes-Oxley code of conduct, which we think relates to the securities claims here. So the point is we're not bringing- You're out of time. Why don't you finish up? Okay. And finally, look, the claim we're bringing is not an unusual claim. In Wilson and in Grace v. Rosenstock, they recognize that securities fraud claims alleging that you are deprived of a potential appraisal remedy or state law remedy, recognize that that's a securities law claim. We've got three of them here. We submit that changes the focus and the gravity, the center of gravity of this case and points to New York. Thank you. Thank you both. The court will reserve decision.